UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

CARLA DENISE AUGUSTUS

VERSUS

JANET NAPOLITANO

CIVIL ACTION

NO. 11-120-JJB

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion for Summary Judgment (Doc. 36), filed by the Defendant, Janet Napolitano. The Motion is unopposed. The Court has jurisdiction pursuant Title 28 of the United States Code, Section 1331. Oral argument is unnecessary.

I.   Background

FEMA employed the Plaintiff, Carla Denise Augustus, from October 18, 2005 until August 15, 2009. Doc. 36-3, p. 13, 15, 19; Doc. 36-4, ¶ 5. Augustus worked various jobs for FEMA during this time period, and in October 2006, received a position as an Applicant Services Specialist in the Individual Assistance (IA) Call Center located in Baton Rouge, which dealt with temporary and direct housing for disaster survivors of Hurricanes Katrina and Rita. Doc. 36-4, ¶¶ 5–8, p. 4–6; Doc. 36-3, p. 32, 39; Doc. 36-5, ¶ 3. The Plaintiff was offered the Applicant Services Specialist position on October 5, 2006 and her employment in the position was effective on October 15, 2006. Doc. 36-4, ¶ 7–8. The Plaintiff's position was split grade, beginning as a Grade 9 position, with the opportunity for promotion to Grade 11. Doc. 36-5, ¶ 8. Split grade employees were expected to be evaluated on their one-year anniversary, and if promotion was warranted, the supervisor would submit a written justification for promotion to the next grade. *Id.* A promotion from Grade 9 to Grade 11 is not automatically granted. *Id.* If the supervisor did not feel a promotion was warranted, the supervisor was to submit a recommendation not to promote based on a specific reason. *Id.*

1

Shortly before Plaintiff's one-year anniversary on October 15, 2007, Plaintiff was transferred to the supervision of Sue Won Narcisse. Doc. 36-7, ¶¶ 1–2. On October 20, 2007, Narcisse conducted a quarterly evaluation of Plaintiff. *Id.* at ¶ 2. The October 2007 evaluation was based on Narcisse's observations of Plaintiff's performance of her job duties and the input of her prior supervisor, whose input Narcisse sought since she had only recently become the Plaintiff's supervisor. *Id*; Doc. 36-5, ¶ 4. Narcisse rated Plaintiff as Proficient in all categories. Doc. 36-7, ¶ 2, p. 4. Narcisse discussed the October 2007 evaluation with Plaintiff, who appeared to be disappointed with the proficient rating in the evaluation and refused to sign the evaluation. *Id.* at ¶ 3. Narcisse informed Plaintiff she could speak with management, more specifically, Maggie Dibenedetto, about her evaluation. *Id.* Dibenedetto received a copy of the unsigned evaluation, which included a notation that the Plaintiff refused to sign, and placed it in Plaintiff's employee file. Doc. 36-5, ¶ 5. Narcisse considered an overall Proficient rating to be a favorable evaluation, and knew that a superior rating was not required for promotion, since Narcisse attained a promotion to Grade 11 without having received a superior rating. Doc. 36-7, ¶¶ 2, 5. Narcisse did not submit a justification for the Plaintiff's promotion; nor did she submit a recommendation that the Plaintiff not be promoted. *Id.* at ¶ 5. Submitting grade level promotions was not within Narcisse's job duties, and during her tenure as a supervisor at FEMA, Narcisse did not submit justifications for pay grade promotions for anyone. Doc. 36-5, ¶ 6.

In November or December 2007, Erica Spencer-Lee became Augustus's direct supervisor. Doc. 36-6, ¶ 6. Spencer-Lee supervised approximately sixty-four people at the time, of which fifteen were eligible for promotion. *Id.* at ¶ 7. Spencer-Lee was responsible for determining whether Augustus should be promoted from Grade 9 to 11, and, if warranted, writing up the justification for the promotion. *Id.* at ¶ 6. On December 19, 2007, Esther White,

who worked in FEMA's New Orleans Transitional Recovery Office, informed Dibenedetto and other Group Advisors by email that if any staff members were expecting a grade increase, but had not yet received one, the increase may not have been processed correctly. Doc. 36-5, ¶ 7, p. 8. The next day, Dibenedetto forwarded the email, which included instructions for a corrective course of action, to supervisors in her group, including Spencer-Lee, and asked them to prepare any grade increases for those who completed their year in service and were due a grade increase. *Id.* Although Spencer-Lee was busy with various responsibilities, she began writing justifications for promotions for employees, including those who did not have a superior rating. Exhibit Doc. 36-6, ¶ 7–8. She did not prepare a justification for the Plaintiff's promotion in December 2007, because Spencer-Lee had just begun supervising her. *Id.* at ¶ 8. Spencer-Lee discussed Augustus's Employee Performance Plan and Quarterly Performance Review with Augustus on January 14, 2008. *Id.* at ¶ 9. Based on Spencer-Lee's observations of the Plaintiff's work duties, Augustus received a favorable evaluation with a proficient rating of "OT," or "On Target," for each performance criterion for the quarter October 1, 2007 through December 31, 2007. *Id.*

Sometime in 2008, Augustus and two other employees asked Dibenedetto why they had not received their promotions from Grade 9 to 11. Doc. 36-5, ¶ 8. As a result of her ensuing conversation with Augustus and the other employees, Dibenedetto asked Spencer-Lee to prepare the justification for Augustus and the other employees. *Id.* at ¶ 9. It was Dibenedetto's understanding that Spencer-Lee had not prepared the justification due to job demands and because she was behind in writing justifications. *Id.* On Feburary 5, 2008, once the Plaintiff had been in her position for one year and more than three months, Spencer-Lee wrote a justification for the Plaintiff to be promoted from Grade 9 to 11. Doc. 36-6, ¶ 10, p. 10. Spencer-Lee

3

declared that she did not write the justification sooner due to lack of guidance on how promotions took place, and because by February 5, she felt as though she had been directly supervising her long enough to strongly state support of a promotion. *Id.* at ¶¶ 10-11. Spencer-Lee submitted the justification, which passed to multiple people, and Augustus's promotion eventually became effective on March 2, 2008. *Id.* ¶ 10, p. 10; Doc. 36-5, ¶¶ 10-11, p. 9–10; Doc. 36-4, ¶ 9, p. 7. Augustus was one of a group of employees who did not receive promotions as quickly as anticipated, but was not the last employee who Spencer-Lee wrote a promotion request for. Doc. 36-6, ¶ 12; Doc. 36-5, ¶ 12. The delay was partly due to a shortage in supervisory staff; only three people's job descriptions included supervisory authority to write grade level promotions. Doc. 36-5, ¶ 12.

The Plaintiff's claims relate to three EEOC complaints she raised while employed by FEMA: EEOC Complaint HS-06-FEMA-000135 (Augustus I), filed on October 20, 2006, EEOC Complaint HS-07-FEMA-00088 (Augustus II), filed on June 12, 2007, and EEOC Complaint HS-08-FEMA-00074 (Augustus III), filed on August 24, 2008. This Court issued a Ruling and Order (Doc. 23) on the Defendant's Motion for Partial Dismissal (Doc. 16) on November 10, 2011. The Ruling and Order addressed whether the claims made in Augustus I and Augustus II were either untimely filed or premature. Doc. 23, at 1–2. The Court held the Plaintiff was allowed to amend its Complaint to show that the claim made in Augustus I has properly exhausted, and dismissed the claim made in Augustus II as prescribed. Doc. 23, at 2. The Plaintiff did not amend the Complaint.[1] The Defendant now seeks summary judgment on the claims made in Augustus III, which correspond with paragraphs sixteen through eighteen of the

---

[1] The Court learned through the Plaintiff's former attorney's Motion to Withdraw as Counsel of Record (Doc. 24) that the Plaintiff is involved in bankruptcy proceedings. Neither party argues that these proceedings affect the ability of this case to move forward or the ability of the Court to rule on the instant Motion.

Complaint (Doc. 1).  This portion of the Complaint based on claims made in Augustus III provides:

> 16.
> On or about October 16, 2007, Plaintiff's supervisor, Ms. Sue Won Narcisse, refused to approve and submit paperwork for a pay grade increase from GS9 to GS11, to which the plaintiff had earned.
> 17.
> On or about October 20, 2007, one of the Applicant Services Supervisors issued Plaintiff an inaccurate and unfair performance evaluation, which the Plaintiff respectfully declined to sign.
> 18.
> Plaintiff's co-worker requested a meeting with the Defendant's Alternative Dispute Resolution (ADR) Program to address concerns she had with the way she was being treated by Ms. Patricia Davis.  In November 2007, Plaintiff was invited to participate in the ADR meeting.  During the meeting, Ms. Davis stated that she did not like the plaintiff, she was not willing to work with the plaintiff and that she had made comments to other employees that they should not associate with the plaintiff because she makes EEO complaints.

Doc. 1, ¶¶ 16–18.

## II.   Motion Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact."  Fed. Rule Civ. P. 56(a).  The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  When the burden at trial rests on the non-moving party, the moving party need only demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case.  *Id.*  The moving party may do this by showing that the evidence is insufficient to prove the existence of one or more essential elements of the non-moving party's case.  *Id.*  A party must support its summary judgment position by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute."  Fed. Rule Civ. P. 56(c)(1).

Although the Court considers evidence in a light most favorable to the non-moving party, the non-moving party must show that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden. *Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139–40 (5th Cir. 1996). Similarly, "[u]nsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence." *Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991). If, once the non-moving party has been given the opportunity to raise a genuine fact issue, no reasonable juror could find for the non-moving party, summary judgment will be granted for the moving party. *Celotex*, 477 U.S. at 322.

III. Analysis

A. Title VII

Title VII makes it unlawful for an employer to retaliate against an individual who "has opposed any practice made an unlawful employment practice by [Title VII]" or who "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a) (2012). An employment retaliation claim based on circumstantial evidence is analyzed using the burden-shifting framework described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). "To establish a prima facie case of retaliation, the plaintiff must establish that: (1) [s]he participated in an activity protected by Title VII; (2) [her] employer took an adverse employment action against [her]; and (3) a causal connection exists between the protected activity and the adverse employment action." *Id.* at 556–57. The anti-retaliation provision protects individuals only from retaliation that produces an injury or harm. *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 US 53, 67 (2006). For the harm to rise to the

6

required level of seriousness, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68. "If the plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action." *McCoy*, 492 F.3d at 557. The Plaintiff may avoid summary judgment if she then "demonstrates a genuine issue of material fact whether the legitimate reasons proffered by the defendant are not its true reasons, but instead are a pretext for discrimination or retaliation." *Septimus v. University of Houston*, 399 F.3d 601, 609 (5th Cir. 2005).

### B. The Defendant's Arguments

As the Plaintiff's claims made in Augustus I and Augustus II are not before the Court, the Court needs only to address the claims made in Augustus III. In support of its Motion, the Defendant argues the October 2007 evaluation was not an adverse employment action, the evidence establishes that the Defendant had legitimate, non-discriminatory and non-retaliatory reasons for the complained-of employment actions, and the Plaintiff cannot show that the reasons given for her failure to receive the promotion in October 2007 were a pretext for retaliation.

### C. Adverse Employment Action

The Court first addresses the Defendant's argument that the Plaintiff cannot establish her October 2007 evaluation constituted an adverse employment action. The Defendant argues Augustus's October 2007 evaluation rated her as proficient in all criteria, which is a favorable rating. The Defendant further argues Augustus cannot show that her October 2007 evaluation was tied to any missed salary or her Grade 11 promotion, as Augustus and her supervisor were

promoted after receiving ratings of proficient. Finally, the Defendant argues the Plaintiff is mistaken that her evaluation was conducted late.

Although the Fifth Circuit historically defined an "adverse employment action" as an ultimate employment decision such as hiring, granting leave, discharging, promoting, or compensating, the Supreme Court's ruling in *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006), expanded the definition to include any action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007). Multiple unpublished Fifth Circuit opinions have held an average or lower than expected employment evaluation is not an adverse employment action. *Watkins v. Paulsen*, 332 Fed. Appx. 958, 960 (5th Cir. 2009); *Mitchell v. Snow*, 326 Fed, Appx. 852, 856 (2009). Multiple unpublished Fifth Circuit opinions also indicate a missed salary increase resulting from an average or above average evaluation is something a reasonable employee would find materially adverse. *King v. Louisiana*, 294 Fed. Appx. 77, 85 (5th Cir. 2008). However, a Plaintiff must present evidence connecting the evaluation to the missed salary increase. *See e.g.*, *Mitchell*, 326 Fed. Appx. at 855 (finding no adverse employment action existed where the Plaintiff presented no evidence that her yearly job performance review led to the denial of a salary increase).

In support of her argument, the Defendant points to evidence that the Plaintiff was given an overall proficient rating in her October 2007 evaluation, which was considered favorable, the Plaintiff received a promotion with a rating of "OT" or "On Target," her supervisor, Erica Spencer-Lee, did not write the Plaintiff a justification for promotion because she was busy with job demands, and the Plaintiff did not get promoted as quickly due to a shortage of supervisory staff.

The Court is not presented with any evidence indicating that Augustus missed a salary increase as a result of her October 2007 evaluation. This is true even when viewing evidence that Augustus was not promoted until more than three months after her one-year anniversary in her position. The only evidence of the reason for the delay shows the delay in Augustus's receiving a salary increase was due to the job demands of her supervisor, the shortage of supervisory staff, and the fact that Augustus had recently been placed under a new supervisor. As such, any missed salary increase due to this delay was not due to the evaluation. The undisputed evidence shows Augustus was promoted during a time in which she received a proficient rating of "On Target," while she also received a proficient rating in her October 2007 evaluation. The only evidence presented shows the October 2007 evaluation is an average evaluation that is not tied to missed salary. The evaluation is not something that well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.

Since Augustus cannot establish that an adverse employment action was taken against her, she cannot establish a prima facie case of retaliation, as required. She cannot satisfy her burden and summary judgment is appropriate.

IV.   Conclusion

Accordingly, the Defendant's Motion for Summary Judgment (Doc. 36) is **GRANTED**.

Signed in Baton Rouge, Louisiana, on February 8, 2013.

_____
**JAMES J. BRADY, DISTRICT JUDGE**